USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/30/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,          :
                                   :    07 Cr 711-04 (LAP)
          v.                       :
                                   :    MEMORANDUM & ORDER
NAVEED ALI BHINDAR,                :
                                   :
------------------------------------x

LORETTA A. PRESKA, Chief United States District Judge:

     Defendant Naveed Ali Bhindar ("Defendant" or "Bhindar") moves pursuant to 18 U.S.C. § 3143(b) and Fed. R. Crim. P. 38(b)(1) for bail pending appeal and a stay of his imprisonment [dkt. no. 267]. Defendant claims that his appeal raises a substantial question of law: that he was deprived of the effective assistance of counsel because his former counsel informed him that his guilty plea would not impact his immigration status. For the reasons set forth below, Defendant's motion is DENIED.

I.   BACKGROUND

     A.   Bhindar's Offense Conduct

     Bhindar was arrested on August 15, 2007, for assisting and participating in a criminal ring that was engaged in extensive credit card fraud, identification document fraud, money laundering, and other criminal activity through the use of false identities. (See Indictment, dkt. no. 57.) During the time-period of the conspiracy, Bhindar owned a grocery store in

Brooklyn and provided valuable support to the ring by, among other things, (1) laundering money for the ring through his store's accounts, (2) allowing the ring to use his store address as the mailing address for the fraudulent identities, (3) acting as a collusive merchant, by charging up fraudulently-obtained credit cards at his store, and (4) providing fraudulent job references for the fake identities used by the ring to obtain mortgages and bank loans. The investigation determined that total losses to various financial institutions resulting from the ring's illegal credit card activity exceeded $9 million. An additional $15 million in intended, and actual losses were attributable to the ring's bank and mortgage fraud activities.

Bhindar was charged in the Indictment in four counts, with: conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2); access device fraud, in violation of 18 U.S.C. § 1029(a); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a); and money laundering, in violation of 18 U.S.C. § 1956(a).

Bhindar, who is a legal permanent resident of the United States, was released on bail following his arrest. He retained William Sandback, Esq., to represent him.

B. <u>Bhindar's Plea</u>

On June 6, 2008, Bhindar pleaded guilty to one count of money laundering, pursuant to a plea agreement with the

Government.  In the plea agreement, the parties stipulated that the applicable United States Sentencing Guidelines ("Guidelines") range was seventy to eighty-seven months, based upon an offense level of twenty-seven and a Criminal History Category of I.  The Guidelines calculation in the plea agreement further stipulated that losses attributable to Bhindar's commission of access device fraud (the underlying offense from which the laundered funds were derived) were greater than $1 million but less than $2.5 million.

The plea agreement gave a significant benefit to Bhindar by permitting him to plead to only one count of the Indictment (with the remaining counts dismissed at sentencing), and by limiting the loss amount attributable to Bhindar for Guidelines calculation purposes to credit card fraud losses involving fraudulent identifications used by the ring specifically at his store.  Thus, instead of potentially being held accountable for $24 million in the total losses caused by the ring, or for the $9 million dollars in credit card fraud losses caused by the ring, the plea agreement stipulated that the losses attributable to Bhindar's conduct were between $1 million and $2.5 million.

Bhindar pleaded guilty before Magistrate Henry B. Pitman, on June 6, 2008.  At the plea hearing, Magistrate Judge Pitman complied in all respects with Rule 11 of the Federal Rules of

3

Criminal Procedure. Magistrate Judge Pitman confirmed that Bhindar was clear-headed and able to understanding the proceeding and that he wanted to plead guilty to Count 12 of the Indictment, charging money laundering. (June 6, 2008 Transcript ("Tr.") at 6-7.) Magistrate Judge Pitman described the elements of the money laundering offense, informed Bhindar of the maximum penalties of the offense, and confirmed that Bhindar understood what the Government would have to prove at trial. (Id. at 7-9.) Magistrate Judge Pitman confirmed that Bhindar had discussed the Sentencing Guidelines with his attorney and how they might apply in his case and that he understood the Guidelines were advisory. (Id. at 9.) The court also questioned Bhindar about his plea agreement with the Government and confirmed that Bhindar understood that, under the plea agreement, he was agreeing to a stipulated Guidelines sentence of seventy to eighty-seven months. (Id. at 11.) Bhindar confirmed that he understood and that he was also voluntarily waiving his right to appeal a sentence not greater than eighty-seven months. (Id.) Magistrate Judge Pitman also determined that Bhindar understood the various constitutional rights he was waiving by pleading guilty. (Id. at 13-15.)

With respect to the immigration consequences of Bhindar's plea, Magistrate Judge Pitman confirmed that Bhindar understood

4

that he would be deported from the United States following service of the sentence imposed:

> The Court: Mr. Bhindar, do you understand that one of the consequences of your plea, if you are not a citizen of the United States is that, at the conclusion of your sentence, you will be removed from the United States and prohibited from ever re-entering the United States? That is a consequence if you are not a citizen, do you understand that?
>
> Bhindar: Yes, Your Honor.

(Id. at 12.)

In his plea allocution, Bhindar then admitted that he had laundered money by depositing and cashing checks through his store bank account for a co-conspirator; that he believed the checks were derived from illegal activity; and that he engaged in the conduct to try to disguise or help his co-conspirator disguise the underlying illegal activity. (Id. at 15-17.)

### C. Bhindar's Sentence

Following his guilty plea, there were repeated delays in the Court's efforts to sentence Bhindar. On multiple occasions, shortly prior to the scheduled sentencing date, Bhindar switched counsel or requested that new counsel be appointed for him, first switching to Uzmah Saghir, Esq. (retained, but later suspended from practice in this court); then to Joseph Grob, Esq. (appointed from CJA panel); then to Mark DeMarco, Esq. (appointed from CJA panel).

In July 2009, while represented by Uzmah Saghir, Bhindar filed a motion "to arrest judgment" under Fed. R. Crim. P. 34(a) [dkt. no. 210], arguing that the Court lacked jurisdiction over the case. The motion also seemed to allege ineffective assistance of prior counsel based upon counsel's advice as to what constituted a money laundering offense. However, in the motion Bhindar did not seek to withdraw his guilty plea. The Court denied this motion sua sponte [dkt. no. 217].

Subsequently, while represented by appointed counsel, Bhindar wrote two pro se letters to the Court, dated November 9, 2009, and March 3, 2010, disputing aspects of his participation in the underlying criminal activity and objecting to the Guideline calculation in the presentence report and plea agreement. By letter dated March 9, 2010, Mark DeMarco, Esq., Bhindar's appointed counsel, wrote to the Court:

> I write this letter, with the consent of Mr. Bhindar and after a lengthy meeting with him, to withdraw both letters. These letters represent nothing more than misguided attempts by a family acquaintance, who is employed as a paralegal, to help Mr. Bhindar and do not reflect my client's position regarding his sentencing. Indeed, Mr. Bhindar is prepared to be sentenced without further delay on March 31, 2010.

At no time prior to his sentencing did Bhindar move to withdraw his guilty plea.

Bhindar was finally sentenced by the Court on March 31, 2010, nearly two years after his guilty plea. The Court

6

sentenced Bhindar to a prison term of seventy months, which was at the low end of the stipulated Guidelines range, and directed Bhindar to surrender for service of his sentence by June 30, 2010.

D. The Instant Motion

By motion dated June 23, 2010, Bhindar moves for bail pending appeal. Citing to the United States Supreme Court's recent decision in Padilla v. Kentucky, 130 S. Ct. 1473 (2010), Bhindar claims that his original defense lawyer, William Sandback, provided ineffective assistance of counsel by misinforming him of the immigration consequences of his guilty plea. (See Def. Mem. at 11.) Bhindar claims that his former counsel advised him "that there was a substantial likelihood that he [Bhindar] would not be [removed] from the United States as a result of the guilty plea and ultimate conviction" and maintains that he would not have entered a guilty plea "[a]bsent counsel's grossly incorrect advice." (Id.) Bhindar argues that this alleged ineffective assistance of counsel claim raises a substantial issue for appeal that "is certain" to result in vacatur of the judgment. (Id. at 14.)

Bhindar also argues that his counsel was ineffective, and his guilty plea involuntary, because Mr. Sandback wrongly advised him that, at sentencing, he could challenge the loss amount attributed to the offense conduct, notwithstanding the

7

stipulated calculations in the plea agreement. (Id. at 16.) Finally, Bhindar claims that he is suffering from physical injuries owing to a recent car accident, requiring physical therapy. (Id. at 10.)

II. DISCUSSION

A. Legal Framework

In relevant part, Title 18, United States Code, Section 3143(b) provides that "the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained" unless certain conditions are met. The Court of Appeals for the Second Circuit has summarized those conditions as follows:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
>
> (2) that the appeal is not for the purpose of delay;
>
> (3) that the appeal raises a substantial question of law or fact; and
>
> (4) that if the substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial on all counts on which imprisonment has been imposed.

United States v. Randell, 761 F.2d 122, 125 (2d Cir. 1985) (quoting United States v. Miller, 753 F.2d 19, 23-24 (3d Cir. 1985)). A "substantial question" is "one of more substance than

8

would be necessary to a finding that it was not frivolous. It is a close question or one that very well could be decided the other way." Id. (internal citation and quotation marks omitted).

B.  Analysis

With respect to the four factors discussed above, the Court acknowledges that Bhindar has complied with the terms of his bail to this point and that he would not pose a flight risk. However, the Court finds that Bhindar fails to satisfy the remaining factors.

i.  Substantial Question of Law or Fact

Bhindar's primary argument is that his original counsel, Mr. Sandback, failed to acknowledge the consequences that Bhindar's guilty plea could have on his immigration status. Bhindar claims that Mr. Sandback advised him that he would not be removed from the United States as a result of his guilty plea. (See Def. Mem. at 11.) Bhindar argues that this advice is contrary to the standard set forth by the Supreme Court in Padilla v. Kentucky, 130 S. Ct. 1473 (2010). In Padilla, the Supreme Court confirmed that advice regarding the deportation consequences of a criminal conviction may be the subject of a claim for ineffective assistance of counsel under the Sixth Amendment. 130 S. Ct. at 1481. The Court traced the dramatic "changes to our immigration law" over the last half century, id. at 1480, and concluded that the "weight of prevailing

9

professional norms supports the view that counsel must advise her client regarding the risk of deportation," id. at 1482; see also id. at 1480 (explaining that, under contemporary law, deportation is the "practically inevitable" consequence of committing a removable offense, and that, accordingly, "deportation is an integral part-indeed, sometimes the most important part-of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes"). Bhindar's argument, though, is without merit.

As an initial matter, the ineffective assistance of counsel argument is not yet ripe for determination by the Court of Appeals. "When a criminal defendant on direct appeal asserts trial counsel's ineffective assistance to the defendant, as the defendant does here, [the Court of Appeals] may '(1) decline to hear the claim, permitting the appellant to raise the issue as part of a subsequent [28 U.S.C.] § 2255 [motion]; (2) remand the claim to the district court for necessary fact-finding; or (3) decide the claim on the record before [the court].'" United States v. Doe, 365 F.3d 150, 152 (2d Cir. 2004) (quoting United States v. Leone, 215 F.3d 253, 256 (2d Cir. 2000)).

In Doe, the Court of Appeals dismissed an appellant's ineffective assistance of counsel claim, permitting him to "raise it in due course in a timely motion under 28 U.S.C. § 2255," but declining to remand to the district court for further

10

proceedings. 365 F.3d at 152-53. In so doing, the Court noted that the Supreme Court had yet to "squarely address [] . . . the relative merits of resolving ineffectiveness claims by way of remand and direct review or eventual section 2255 motion and appeal." Id. at 153. The court, however, provided various reasons why it was "unpersuaded" that remand would "usually be the better course." Id. at 153 n.2. Among its reasons, the court noted that: (i) "a collateral proceeding under section 2255 provides the defendant with an ample remedy for any ineffectiveness claim," id. at 154; (ii) "judicial economy is served" by requiring the defendant to wait until a section 2255 proceeding because the district court "will then be able to decide all of the defendant's collateral claims in one proceeding rather than deciding his ineffectiveness claim now, on remand, and his other collateral claims, should any arise, later," id.; and (iii) if remand was justified simply to ensure that the defendant had the assistance of counsel, remand would be required in every case and "would establish, in effect, a constitutional right to representation by counsel in pursuit of an ineffectiveness claim," id. at 155. Accordingly, the Court of Appeals has expressed its decided preference for what should occur where, as here, a defendant prematurely raises an ineffective assistance of counsel claim on appeal: the appeal

11

should be dismissed without prejudice to the filing a § 2255 petition before the sentencing court.

Here, the only evidence in support of Bhindar's claim that Mr. Sandback misrepresented the fact that Bhindar would not be deported should he plead guilty is one sentence in Bhindar's current counsel's affirmation in support of the instant motion wherein his counsel makes the allegation "upon information and belief." (See Affirmation ¶ 12.)  Such evidence would be patently insufficient for the Court of Appeals, on this record, to consider the issue on direct appeal.  Accordingly, the Court rejects Bhindar's claim that his direct appeal raises a substantial question of law and finds that it does not satisfy the requirement set forth in 18 U.S.C. § 3143(b) to justify bail pending appeal.

Notwithstanding the timing of his ineffective assistance claim, the Court finds that the claim is without merit. Bhindar's contention that Mr. Sandback misinformed him of the immigration consequences (a claim that Bhindar has not raised until a week before he is due to surrender to the Bureau of Prisons) is belied by the colloquy Bhindar had with Magistrate Judge Pitman during his plea allocution.  At that time, Magistrate Judge Pitman told Bhindar:

>   The Court:        Mr. Bhindar, do you understand that one
>                     of the consequences of your plea, if
>                     you are not a citizen of the United

12

>                         States is that, at the conclusion of
>                         your sentence, you will be removed from
>                         the United States and prohibited from
>                         ever re-entering the United States?
>                         That is a consequence if you are not a
>                         citizen, do you understand that?
>
>     Bhindar:            Yes, Your Honor.

(Tr. at 12.) This interaction between Magistrate Judge Pitman and Bhindar ought to have removed any doubt from Bhindar's mind that his guilty plea would result in removal. The Court is aware that the issue of whether a court's advisement to a defendant that his guilty plea will result in removal--thereby removing any doubt from the defendant's mind despite any contrary advice from the defendant's lawyer--has not been addressed post-<u>Padilla</u>. However, in this case, the Court finds that the clear instruction from Magistrate Judge Pitman was sufficient to put Bhindar on notice that he would be removed if he pleaded guilty. See <u>Zhang v. United States</u>, 506 F.3d 162, 169 (2d Cir. 2007) (holding that, in a case where the question of whether the defendant's guilty plea would result in removal, the district court's notification to defendant that he may be removed if he pleaded guilty was sufficient "to put [him] on notice that his guilty plea had potential immigration consequences"). With this clear instruction, Bhindar would be hard-pressed to show that the ineffective assistance of counsel

13

prejudiced his defense, a necessary element under Strickland v. Washington, 466 U.S. 668 (1984).

With respect to Bhindar's remaining substantial question of law, i.e., that Mr. Sandback misinformed him regarding his opportunity to challenge the loss calculation at sentencing, the Court finds this to be meritless. As set forth during his plea, the Government had ample evidence to support the allegations contained in the Indictment. In addition, Bhindar's offense level and Guidelines range was set forth in his plea agreement—an agreement he signed and acknowledged during his plea allocution—and, as the Government points out in its Opposition Brief, "each time Bhindar changed counsel following his guilty plea (a total of three times), the Government reviewed the Guidelines calculation, and the underlying, supporting evidence for it, with each successive counsel. None of Bhindar's lawyers contested the correctness of [the] Guidelines calculation contained in the plea agreement or presentence report." (Govt. Mem. at 12.) Accordingly, the Court finds that, at this juncture, Bhindar's last-minute claim that Mr. Sandback misadvised him regarding the loss calculation does not support his request for bail pending appeal. This claim would be better suited in a § 2255 petition once the record has been more fully developed.

14

   ii. <u>Delay</u>

As set forth above, nearly two years passed between Bhindar's guilty plea and his sentencing. This delay was mostly due to the fact that Bhindar changed counsel three times. With this history, the Court is not persuaded by Bhindar's current counsel's claim that the instant motion "is not for the purpose of delay." (Affirmation ¶ 11.)

III. <u>CONCLUSION</u>

For the foregoing reasons, the Court finds that the Defendant does not raise a substantial issue of law to merit bail pending appeal. Moreover, the Court finds that the instant motion is nothing more than another delay tactic from this Defendant. The Court has considered the remaining arguments in Defendant's motion and finds them to be without merit.

Accordingly, Defendant's motion for bail pending appeal [dkt. no. 267] is DENIED. Mr. Bhindar shall surrender to the institution designated by the Bureau of Prisons no later than 2:00 p.m. today.

SO ORDERED.

Dated: New York, New York
   June 30, 2010

          *Loretta A. Preska*
          Loretta A. Preska, Chief U.S.D.J.